1  JOAN E. COCHRAN, ESQ., SBN 128251
   joan@cochranlaw1.com
2  LISA KRALIK HANSEN, ESQ., SBN 149455
   lisa@cochranlaw1.com
3  **COCHRAN, DAVIS & ASSOCIATES, P.C.**
4  36 Malaga Cove Plaza, Suite 206
   Palos Verdes Estates, CA 90274
5  (310) 373-0900 - telephone
6  (310) 373-0244 – facsimile
7
   **Attorneys for Defendant THE GEO GROUP, INC.**
8
9              UNITED STATES DISTRICT COURT FOR THE
10
                 CENTRAL DISTRICT OF CALIFORNIA
11
12 KARLA ARANDA, an individual and ) Case No. 5:22-cv-00054 JGB (SHKx)
13 wrongful death heir, BRYAN       )
   ARANDA, an individual and        )
14 wrongful death heir,             ) **NOTICE OF MOTION AND**
                                     ) **MOTION FOR SUMMARY**
15                                   ) **JUDGMENT;**
                                     )
16              Plaintiffs,          ) **MEMORANDUM OF POINTS**
                                     ) **AND AUTHORITIES**
17  v.                               )
                                     ) *Filed concurrently with Statement of*
18 THE GEO GROUP, INC. d/b/a GEO    ) *Uncontroverted Facts and*
19 CALIFORNIA, INC.                  ) *Conclusions of Law; Request for*
                                     ) *Judicial Notice; Declarations of*
20                                   ) *James Janecka, Dr. Michael*
                                     ) *Blumenkrantz and Lisa Kralik*
21              Defendants.          ) *Hansen; Appendix of Exhibits;*
                                     ) *[proposed] Order; [Proposed]*
22                                   ) *Judgment*
                                     )
23 ─────────────────────────────── ) **Hearing Date:   May 20, 2024**
                                       **Time:           9:00 a.m.**
24                                      **Courtroom:      1**
25
26
27                                  1
   _____
28                               THE GEO GROUP, INC.'S MOTION FOR SUMMARY
                                                                JUDGMENT
                                        Case No. 5:22-cv-00054 JGB (SHKx)

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 20, 2024, at 9:00 a.m., in Courtroom 1 of the above-entitled court located at 3470 Twelfth Street, Riverside, California, Defendant The GEO Group, Inc. ("GEO") will and hereby does move this court for summary judgment in favor of GEO and against Plaintiffs Karla Aranda and Bryan Aranda ("plaintiffs"), pursuant to Fed.R.Civ.P. 56.

GEO moves for summary judgment on the grounds that wrongful death causation cannot be met in this case given the decedent's release from detainment on February 14, 2018 and his death on September 19, 2019, which was19 months later.  The close causal connection required to sue GEO for wrongful death under California law cannot be met in this case, entitling GEO to summary judgment as a matter of law and based on the uncontroverted facts and admissible evidence establishing there is no genuine issue of material fact.

GEO also moves for partial summary judgment on the grounds that plaintiffs, as wrongful death heirs, have not claimed allowable wrongful death damages but are claiming personal injury "general damage" which are not allowable under California's statutory wrongful death cause of action.  The plaintiffs are limited in the damages which they can seek as wrongful death heirs as a matter of law to those items allowable under California law.  In addition, GEO is entitled to partial summary judgment on plaintiffs' claim for damages as

plaintiffs have not and cannot meet their burden of proving the financial support which the decedent provided to them prior to his death, in order to recover any loss of financial services the decedent and their admissions in response to request for admission eliminate this item of their damages.

Pursuant to Fed.R.Civ.P. 19 and 21, GEO also moves the court to compel the joinder of non-party Wellpath, LLC formerly known as Correct Care Solutions, LLC ("Wellpath") as the court is authorized to compel joinder "at any time" and the failure to join necessary and indispensable parties was raised in GEO's Answer.  If GEO's Motion for Summary Judgment is not granted in favor of GEO, GEO requests the Court order plaintiffs be compelled to join Wellpath as a defendant in this action, as Wellpath was the entity responsible for the medical services at the Adelanto Detention Facility during the time period of the detainment of plaintiffs' decedent.

The motions are based on this notice, the attached memorandum of points and authorities, the concurrently filed statement of uncontroverted facts and conclusions of law, the concurrently filed declarations of James Janecka, Michael Blumenkrantz, M.D., and Lisa Kralik Hansen, the concurrently filed appendix of exhibits, the concurrently filed request for judicial notice, all pleadings on file with the court in this action, and any further oral and documentary evidence which may be presented at the hearing on the motions.

Dated:  March 22, 2024

**COCHRAN, DAVIS & ASSOCIATES, P.C.**

*s/ Lisa Kralik Hansen*

By: _____
  JOAN E. COCHRAN, ESQ.
  LISA KRALIK HANSEN, ESQ.
**Attorneys for Defendant THE GEO GROUP, INC.**

4

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT …………...… 5

II.     STATEMENT OF THE UNCONTROVERTED FACTS …………… 6

        **Decedent's Condition Upon Detainment and**

        **During Detainment** …………………………………………………… 6

        **Medical Care Following Detainment and The**

        **Decedent's Failures In His Own Care** ………………………………… 8

        **Written Discovery and Depositions** ………………………………… 10

        **Expert Reports and Dr. Blumenkrantz's Declaration** ……………… 11

III.    THE DEATH OF THE DECEDENT WAS NOT CAUSED

        BY SEVEN MONTHS OF DETAINMENT

        AT ADELANTO ……………………………………………….. 15

        A.      **Causation Can Be Decided As a Question of Law** …………… 16

        B.      **The Decedent's Death Nineteen Months After**

                **Release From Detainment is Too Remote and**

                **Too Attenuated** ……………………………………………….. 20

        C.      **There Are Nineteen Months of Intervening Forces** …………… 22

        D.      **Public Policy Considerations Weigh in Favor of**

                **GEO Regarding the Lack of Causation** ………………………... 23

i

**IV.**   **WRONGFUL DEATH DAMAGES ARE NOT CLAIMED**

      **AND PLAINTIFFS LACK PROOF OF ECONOMIC**

      **LOSS** ……………………………………………………… 25

**V.**   **WELLPATH SHOULD BE JOINED OR THIS**

      **ACTION DISMISSED** …………………………………………… 27

**VI.**   **CONCLUSION** ……………………………………………… 29

1
2

# TABLE OF AUTHORITIES

## CASES

3

*ATD Corp. v. Lydall, Inc.*

4

5

     159 F.3d 534 (Fed. Cir. 1998) ……………………………………… 27

6

*Bromme v. Pavitt*

7

     5 Cal.App.4th 1487 (1992) …………………………………………… 15

8

9

*Fernandez v. Jimenez*

10

     40 Cal.App.5th 482 (2019) …………………………………………… 25

11

*Kamaraperu v. Feldsted*

12

13

     237 Cal.App.4th 60 (2015) …………………………………………… 24

14

*McCaughey v. Liberty Mut. Ins. Co.*

15

     2020 WL 2568303, *3 (C.D. Cal. Jan. 30, 2020) ………………………. 16

16

17

*McCowen v. Jamieson*

18

     724 F.2d 1421 (9th Cir. 1984) ……………………………………… 27

19

*Modisette v. Apple Inc.*

20

21

     30 Cal.App.5th 136 (2018) ………………………………………… 16,24

22

*Nelson v. County of Los Angeles*

23

     113 Cal.App.4th 783 (2003) ………………………………………... 25

24

25

*Norgart v. Upjohn Co.*

26

     21 Cal.4th 383 (1999) ……………………………………………… 15

27

28

iii

*Novak v. Continental Tire N. Am.*

    22 Cal.App.5th 189 (2018) …………………………… 15,16,17,18,20,21,22

*Pulitzer-Polster v. Pulitze*

    784 F.2d 1305 (5th Cir. 1986) …………………………………………… 28

*Osborn v. Irwin Memorial Blood Bank*

    5 Cal.App.4th 234 (1992) ……………………………………………… 15

*Quiroz v. Seventh Ave. Center*

    140 Cal.App.4th 1256 (2006) ………………………………………… 25

*Salin v. Pacific Gas & Elec. Co.*

    136 Cal.App.3d 185 (1982) …………………………………………. 20

*State Dept. of State Hospitals v. Superior Ct.*

    61 Cal.4th 339 (2015) ……………………………………………… 16,23

*Steinle v. City & County of San Francisco*

    230 F.Supp.3d 994 (N.D. Cal. 2017) …………………………………… 16

## **STATUTES**

California Code of Civil Procedure

    § 377.34 …………………………………………………………… 25

    § 377.60 …………………………………………………………… 15

    § 377.61 …………………………………………………………… 25

Federal Rules of Civil Procedure

Rule 21 ……………………………………………………………… 27

Rule 19 ……………………………………………………………... 29

Rule 19(a) …………………………………………………………… 28

Rule 19(b) …………………………………………………………… 28

**<u>OTHER</u>**

California Jury Instruction CACI 3921……………………………….. 25

THE GEO GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT
Case No. 5:22-cv-00054 JGB (SHKx)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The death of Alfredo Aranda Olguin ("Aranda" or "decedent") on September 19, 2019 does not have the required "close causal connection" to his detainment at the Adelanto detention facility.  Aranda was detained from August 8, 2017 to February 14, 2018.  There were 19 months between his release from detainment and his death.  Plaintiffs cannot meet the wrongful death causation requirements under California law, so The GEO Group, Inc. ("GEO") is entitled to summary judgment in its favor.

Plaintiffs have sued GEO for a single cause of action for wrongful death. At the time of decedent's detainment at Adelano, the medical services at Adelanto were contracted to Wellpath, LLC formerly known as Correct Care Solutions, LLC ("Wellpath").  Plaintiffs have not sued Wellpath, the entity responsible for the medical care and treatment of detainees at Adelanto in 2017-2018.  Complete relief cannot be afforded without the joinder of Wellpath.  If necessary, GEO requests the Court order plaintiffs to join Wellpath as a defendant.

Plaintiffs are seeking damages which are not allowable as a matter of law on the statutory claim for wrongful death under California law.  The damages claimed by plaintiffs in discovery are not available as a matter of law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   STATEMENT OF THE UNCONTROVERTED FACTS

### Decedent's Condition Upon Detainment and During Detainment

Aranda entered the Adelanto Detention Facility with a documented history of diabetes and obesity.  (SUF 8-13, and 69-1)  The Intake report of Dr. Medrano at Adelanto dated August 9, 2017 indicated Aranda did not recall what medications he was taking and was given the following assessments:  (1) Type 2 Diabetes without complications; (2) Hypertension; (3) Hyperlipidemia; (4) Trigeminal neuralgia; and (4) Obesity.  (SUF 11)  Medications were prescribed. (SUF 11)

The Adelanto medical records show that the decedent was in the hospital 2-3 weeks before detainment – decedent "stated that he has been to a nephrologist and was going to start dialysis."  (SUF 9-10)  Also noted were "multiple abscesses prior arrival requiring hospitalization."  (SUF 9)

By August 23, 2017, the medical records noted Aranda had chronic kidney disease, stage 4 (severe).  (SUF 12)  On September 10, 2017, Dr. Medrano noted Aranda "is likely going to need dialysis in the future."  (SUF 13)  Aranda was given blood pressure checks three times a week for four weeks beginning in September 2017.  (SUF 14)  He refused the blood pressure check on September 18, 2017.  (SUF 14)  On September 20 2017, decedent acknowledged his long-standing ill condition.  (SUF 69-1)

_____
THE GEO GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT
Case No. 5:22-cv-00054 JGB (SHKx)

On October 30, 2017, Aranda was found in his bunk non-responsive with blood pressure about 210/110, with 911 called followed by emergency transport to a hospital.  (SUF 15)  On October 31, 2017, Aranda refused vitals and assessment in rounds by a registered nurse.  (SUF 16)

On November 5, 2017, Aranda was found nonresponsive and was transported to a hospital.  (SUF 17)  On November 26, 2017, Aranda was found nonresponsive and admitted for medical observation in the infirmary and then returned to the dorm the next day.  (SUF 18)  On November 30, 2017, Dr. Medrano noted Aranda had received treatment options from the nephrologist and noted "he will wind up needing dialysis for sure."  (SUF 19)

On December 1, 2017, Dr. Medrano noted Aranda "[h]as been seen by 2 different nephrologists (one in hospital over the course of hospitalization and once for consult yesterday).  Neither have recommended dialysis acutely but agree he is headed there and should be prepared for."  (SUF 20)  On December 6, 2017, Aranda refused medications despite the fatigue he was experiencing being a "part of his medical diagnosis."  (SUF 21)  On December 8, 2017, Aranda was found nonresponsive and was transferred to the infirmary for monitoring.  (SUF 22)  On December 11, 2017, after discussion with his wife, Aranda opted for hemodialysis and was referred to a vascular surgeon for a fistula for dialysis.  (SUF 23)  Aranda refused medications again on December 14, 2017.  (SUF 24)  Dr. Medrano saw

7

Aranda on December 19, 2017, following his cardiology consult.  (SUF 25)  On December 28, 2017, Dr. Medrano noted Aranda had a referral for AV fistula in anticipation of dialysis.  (SUF 26)

In January 2018, Aranda's detainee medical records show consults outside the Adelanto facility on January 11, 12, and 17.  (SUF 27)  On January 21, 2018, Aranda refused medications.  (SUF 28)  On January 26, 2018, Aranda was found nonresponsive and was transported to Victor Valley Hospital and was thereafter in the infirmary.  (SUF 29)  On January 30, 2018, after refusing medical care and wanting to return to the dorm, Aranda was found unresponsive and transferred to a hospital.  (SUF 30)  Aranda remained at Victor Valley Hospital through his OREC Release on February 14, 2018, when he was discharged for dialysis three times a week.  (SUF 31)

**Medical Care Following Detainment and The Decedent's Failures In His Own Care**

Aranda was released from detainment on his own recognizance (OREC) on February 14, 2018.  (SUF 5; OREC Release, **Ex. 7**)  At the time of the OREC release, Aranda was at Victor Valley Hospital.  (SUF 31)  He was at the following hospitals intermittingly after his release from detainment on the following dates (SUF 33):

*///*

8

| Hospital | Dates |
|---|---|
| Victor Valley | 2/15/18 (day after OREC release) |
| Community Hospital Huntington Park | 3/23/18 – 8/13/19 |
| Beverly Hospital | 7/13/18 – 9/19/19 |

The decedent had a documented history of leaving medical facilities against medical advice, both before and after detainment, as follows:

**Beverly Hospital**

| 6/15/15 | Left against medical advice |
|---|---|
| 4/25/18 | Left against medical advice |
| 4/25/18 | Left against medical advice |
| 4/25/18 | Left against medical advice |
| 7/4/18 | Left against medical advice |
| 10/31/18 | Left against medical advice |
| 1/12/19 | Left against medical advice |
| 4/26/19 | Left against medical advice |
| 6/9/19 | Left against medical advice |

**Community Hospital**

| 4/14/11 | Left against medical advice |
|---|---|
| 4/7/12 | Left against medical advice |
| 7/23/14 | Left against medical advice |
| 8/21/14 | Left against medical advice |
| 3/4/16 | Left against medical advice |
| 7/19/19 | Left against medical advice |
| 8/13/19 | Left against medical advice |

(SUF 34-35)

///

///

9

The decedent also had a history of not taking medications, refusing treatment, refusing vaccines, failure to follow a restrictive diet, and continued smoking – both before, during and after detainment.  (SUF 11-62)

**Written Discovery and Depositions**

In response to GEO's interrogatories seeking all facts in support of plaintiffs' claims for wrongful death, both plaintiffs stated:

> Defendants owned, operated, entrusted, and controlled the premises, including but not limited to, creating of quality habitat; medical treatment; and dietary and meals. Despite, the capability of complying with the medical prescription and meal plans, Defendant willingly neglected to comply, which created severe long term bodily injuries and damages for Plaintiff that resulted in death.  Defendant failed to allow and provide the Decedent's with the appropriate medication and treatment while in Defendant's custody. Further, they willfully neglected to follow Decedent's dietary restrictions, which were in place to limit several health factors.  (SUF 37)

In deposition, plaintiff Karla Aranda testified that Alfredo Aranda had diabetes since he was a teenager.  She described Alfredo as "ill" before detainment due to diabetes and renal problems.  (SUF 38-39)

In deposition, plaintiff Bryan Aranda (20 years old) testified that his father "seemed weak," "sick," and "a diabetic" at the time of detainment at Adelanto. The last time Bryan remembers his father in good health was before he was in foster care (from age 11-15). Bryan confirmed his father was a "chain smoker." His father "would smoke all the time," "smoking cigarette after cigarette after cigarette." Bryan estimated his dad smoked "about a pack a day." Bryan testified his father never stopped smoking, even after being released from detainment. (SUF 40-43)

### **Expert Reports and Dr. Blumenkrantz's Declaration**

In the Fed.R.Civ.P. 26 reports, GEO's designated nephrologist Dr. Michael Blumenkrantz explained the decedent was on the "brink of dialysis" at the time of detainment in August 2017, and his overall medical condition improved during detainment. (SUF 44-62) The Expert Report and Declaration of Dr. Blumenkrantz further explain that:

- Aranda's death 19 months after detainment at the Adelanto Detention Facility was not, to a reasonable degree of medical certainty, caused by the medical care and treatment which Aranda received while he was detained at Adelanto. (SUF 45-46, 48)

- When Aranda was in a controlled environment during his detainment at Adelanto, his overall medical condition was stabilized and actually improved.  (SUF 49)

- Aranda had renal failure for over 20 years and was on the brink of dialysis at the time he entered detainment at Adelanto in August 2017.  His diabetes was poorly controlled both before and after detainment at Adelanto, with complications of obesity, continued smoking, and other factors.  His blood pressure and lipid disorder, as well as diabetes, came under control only during his detainment at Adelanto.  Aranda was also noncompliant with his own medical care, his diet, refusal to exercise, refusal to take necessary medications, refusal of procedures, refusal of various tests, and taking himself out of hospitals against medical advice.  (SUF 50)

- In 2016, the medical records of Community Hospital Huntington Park (CHHP) showed that Aranda had a diagnosis of malignant hypertension, diabetes out of control, and renal failure.

- In January of 2017, Aranda's creatinine (a chemical compound metabolite from the energy producing processes in the muscles which healthy kidneys filter out of the blood) was four times elevated up to 2.8.  The baseline is 0.6.  (SUF 51)

12

- As of January 2017, Aranda was in Stage 4 renal failure with his blood pressure out of control.  (SUF 52)

- Prior to detainment, Aranda's hemoglobin A1c (used to measure a person's diabetes management) was 10.5.  In November 2017, it was down to 7.4.  In December 2017, it was down to 7.0, showing a reasonable control of his diabetes during detainment.  Aranda's blood pressure and A1c were improving at that time.  Aranda started dialysis on January 30, 2018, prior to his release from detainment.  On the date of his release, an ultrasound showed Aranda had congestive heart failure.  (SUF 53-55)

- After being released from detainment, the medical records show that Aranda's blood pressure was again elevated.  His kidneys were deteriorating despite being on dialysis.  (SUF 56)

- The medical care which Aranda received during detainment at Adelanto actually improved his overall medical condition as opposed to his condition both before and after detainment.  During detainment, Aranda's blood pressure, diabetes, and cholesterol levels were at their best based on his extensive medical records.  Aranda had long-standing coronary artery disease which impacted his deteriorating kidney function, as did his noncompliance with medications, noncompliance with diet, and severe nicotine addiction – all of which can lead to chronic kidney disease

13

progression and kidney deterioration.  During detainment, Aranda received intensive medical care at the Adelanto detention facility while in a controlled environment and in being transported to local area hospitals. (SUF 44, 47)

- After being released from detainment, the medical care which Aranda received was substandard and was a causal factor in his demise on September 19, 2019 (along with his own noncompliance).  After being released from detainment, Aranda saw a medical doctor less frequently than he did during detainment.  (SUF 48)

- Aranda's death on September 19, 2019 was not caused by the medical care he received during his detainment at Adelanto, which was from August 8, 2017 to February 14, 2018.  (SUF 45, 46, 49)

(SUF 44-62; Dr. Blumenkrantz Report, **Ex. 16**: Dr. Blumenkrantz Decl. ¶ 4-12)

Plaintiffs' designated nephrologist Dr. Mordechai Nosrati concluded, at most, the decedent needed dialysis after detainment.  Dr. Nosrati did not opine that the decedent's death 19 months after release from detainment was caused by the medical care he received during detainment.  (SUF 63-65)  Dr. Nostrati's limited report is not enough to create a genuine issue of material fact about wrongful death causation.

14

Plaintiffs also designated Roger Clark who has law enforcement experience but is not a medical doctor.  Clark expressly stated he offers no opinions on the medical care provided by the medical personnel at Adelanto.  (SUF 66-67) Clark's report is not admissible evidence on wrongful death causation.

## III.   THE DEATH OF THE DECEDENT WAS NOT CAUSED BY SEVEN MONTHS OF DETAINMENT AT ADELANTO

A wrongful death cause of action may lie by qualifying heirs if the death was "caused by the wrongful act or neglect of another."  Cal. Code Civ. Proc.  § 377.60 (emphasis added).  The elements required to establish a wrongful death cause of action are:  "(1) a wrongful act or neglect on the part of one or more persons that (2) cause[s] (3) the death of [another] person."  *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 404 (1999) (internal quotations omitted).  "Under section 377, the plaintiff must prove the death was 'caused by' the defendant's wrongful act or neglect, i.e., the wrongful act or neglect was a cause in fact of the death." *Bromme v. Pavitt*, 5 Cal.App.4th 1487, 1497 (1992).  Causation between the injury and alleged wrongful death "is ultimately a matter of probability and common sense."  *Osborn v. Irwin Memorial Blood Bank*, 5 Cal.App.4th 234, 253 (1992).  California case law in the wrongful death context requires a "close causal connection between the defendant's conduct" and the death.  *Novak v. Continental Tire N. Am.*, 22 Cal.App.5th 189, 198 (2018) (emphasis added).

The wrongful death causation standard cannot be met in this case.  The decedent's death on September 19, 2019 occurred 19 months after release from detainment and lacks the required "close causal connection" to the medical care he received during detainment at Adelanto.  (SUF 33-69)

A.    **Causation Can Be Decided As a Question of Law**.

Where the facts lead to the "only reasonable conclusion" of lack of causation, the question of causation becomes one of law and not fact.  See *State Dept. of State Hospitals v. Superior Ct.*, 61 Cal.4th 339, 353 (2015) ("where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact"); *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 154 (2018) ("[t]he extent or scope of a defendant's liability is a question of law").  See also, *McCaughey v. Liberty Mut. Ins. Co.*, 2020 WL 2568303, *3 (C.D. Cal. Jan. 30, 2020) (this court cited *State Dept.* for same proposition); *Steinle v. City & County of San Francisco*, 230 F.Supp.3d 994, 1034 (N.D. Cal. 2017) (citing *State Dept.* for same proposition).

"A number of courts have found, as a matter of law, that a defendant is not liable for an injury only distantly connected to defendant's conduct."  *Novak*, 22 Cal.App.5th at 198.  The *Novak* court explained, utilizing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), as follows:

THE GEO GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT
Case No. 5:22-cv-00054 JGB (SHKx)

*Palsgraf* and other cases denying liability for an injury following an unlikely series of events have sometimes been resolved as a question of duty but, ultimately, are founded on the lack of a close causal connection between the defendant's conduct and the injury suffered.

"What is the true reason that so many of us feel that the [*Palsgraf*] case was correctly decided, and that Mrs. Palsgraf should not recover?," Prosser asked. (Prosser, *Palsgraf Revisited*, *supra,* 52 Mich. L.Rev. at p. 27.) "It is that what ... happen[ed] to her is too preposterous. Her connection with the defendant's guards and the package is too tenuous; in the old language, she is too remote. The combination of events and circumstances necessary to injure her is too improbable, too fantastic." (*Ibid.*)  *Novak*, 22 Cal.App.5th at 198.

In this case, there is a "lack of a close causal connection" between GEO's alleged conduct and the decedent's death so the causation issue can be decided as a matter of law.  The 19 months between the decedent's release from detainment and his death lack the requisite "close causal connection" required under *Novak*.

Even if a defendant "set in motion a series of events that led" to the alleged injury, the "connection between defendants' conduct and the injury suffered" can be "too attenuated" to show the injury was "within the scope of the risk created by

THE GEO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT
Case No. 5:22-cv-00054 JGB (SHKx)

1
2
3
4
5

defendants' conduct." *Novak*, 22 Cal.App.5th at 196-197.  An injury that is "connected only distantly and indirectly to defendant's negligent act" is not enough.  *Novak*, 22 Cal.App.5th at 197 (citing Rest. 2d Torts § 435(2)).  In this case, the causal connection for wrongful death cannot be met.

6
7
8
9
10
11
12
13
14
15
16
17

In the First Amended Complaint, plaintiffs alleged the decedent "lived with Type 2 Diabetes for many years" at the time of his detainment.  (SUF 68)  The decedent was diagnosed with Type 2 diabetes at age 19, was morbidly obese, had uncontrolled A1c levels and high blood pressure prior to his detainment at Adelanto.  (SUF 53)  The decedent also had liver disease.  (SUF 69)  The decedent was in detainment at Adelanto for a limited period of time, from August 8, 2017 to February 14, 2018.  (SUF 1, 5)  The decedent died on September 19, 2019, which is 19 months after release from detainment.  (SUF 6; Death Certificate, **Ex. 8**)

18
19
20
21
22
23
24
25
26

In written discovery, plaintiffs only alleged generalities with no specifics to meet their causation burden to sue GEO for wrongful death.  (SUF 37)  Plaintiffs' nephrologist Dr. Nosrati opines only that the decedent needed dialysis after detainment.  (SUF 63-65)  Dr. Nosrati did not opine the decedent's death 19 months after his release from detainment was "caused by" the medical care he received during detainment.  Indeed, Dr. Nosrati's report only amounts to what the *Novak* court found was insufficient to meet the wrongful death causation

27
28

standard – even if GEO "set in motion a series of events that led" to the alleged injury, the "connection between [GEO's] conduct and the injury suffered" can be "too attenuated" to show the injury was "within the scope of the risk created by defendants' conduct." *Novak*, 22 Cal.App.5th at 196-197.  Needing dialysis, which the decedent was on the brink of prior to detainment, does not sufficiently connect detainment to his death (which occurred 19 months after release from Adelanto).  The Rule 26 report of Dr. Blumenkrantz, the declaration of Dr. Blumenkrantz, and the decedent's own medical records establish the decedent's death was not "caused by" GEO during detainment at Adelanto.  (SUF 8-69-1)

The decedent was on the brink of dialysis at the time of detainment in August 2017 with other irreversible complications impacting his health.  The decedent was obese and a smoker.  The medical care during detainment actually improved the decedent's overall medical condition, with other factors complicating his declining kidney function.  (SUF 44, 49-56)  This was a man with a short life expectancy upon entering detainment at Adelanto due to decades of ill health.

As Dr. Blumenkrantz opines, the decedent's death 19 months after release from detainment was not caused by the medical care he received at Adelanto during detainment.  (SUF 44-64)  The expert report and declaration of Dr. Blumenkrantz establish that plaintiffs cannot meet their burden of proving the

19

causal connection between detainment at Adelanto and the death of the decedent. Therefore, GEO is entitled to summary judgment as a matter of law.

## B. **The Decedent's Death Nineteen Months After Release From Detainment is Too Remote and Too Attenuated**.

A cause that is too remote or attenuated is not a legal cause.  See *Novak*, 22 Cal.App.5th at 196 ("[t]he question is whether there is a sufficient connection between the risks created by defendants' conduct and the injury [plaintiff] suffered to hold defendants responsible"); *Salin v. Pacific Gas & Elec. Co*., 136 Cal.App.3d 185, 190 (1982) ("[i]n a Code of Civil Procedure section 377 wrongful death action, it must, of course, be established that the 'proximate cause' of the death was the negligence or other wrongful act of the defendant").

Even if a defendant "set in motion a series of events that led" to the alleged injury, the "connection between defendants' conduct and the injury suffered" can be "too attenuated" to show the injury was "within the scope of the risk created by defendants' conduct." *Novak*, 22 Cal.App.5th at 196-197.  An injury that is "connected only distantly and indirectly to defendant's negligent act" is not enough.  *Novak*, 22 Cal.App.5th at 197 (citing Rest. 2d Torts § 435(2)).

In *Novak*, the decedent was involved in a car accident when his tire blew out.  Six years later he died after being struck in a crosswalk while riding a mobility scooter that was necessitated by the car accident.  The California Court

20

of Appeal affirmed summary judgment in favor of the defendant in that case due to an insufficient causal link. Here, there is an insufficient causal link between decedent's death and any alleged action or inaction of GEO during his detainment.

As the *Novak* court noted, "[a] number of courts have found, as a matter of law, that a defendant is not liable for an injury only distantly connected to defendant's conduct." 22 Cal.App.5th at 200. In this case, there is an insufficient link between the decedent's death in September 2019 and his detainment at Adelanto from August 2017 to February 14, 2018. Simply put, there is too much "distance" between the decedent's detainment at Adelanto and death.

Dr. Nosrati does not even comment on the 19 months between release from detainment and death. (SUF 63-65) Dr. Blumenkrantz opines that the best medical care the decedent had was *during* his detainment, when he was in a controlled environment. During detainment, the decedent's A1c and blood pressure were well controlled and lowered. (SUF 44-62) Thus, plaintiffs have no expert evidence to prove wrongful death causation and GEO has disproved any causal connection with Dr. Blumenkrantz's expert report and declaration. (SUF 8-69-1)

In addition, plaintiffs' deposition testimony confirmed the decedent was a chronic smoker, smoking a pack of cigarettes a day at the time of his detainment. (SUF 42-43) The decedent continued to smoke even after his release from

THE GEO GROUP, INC.'S MOTION FOR SUMMARY
JUDGMENT
Case No. 5:22-cv-00054 JGB (SHKx)

detainment.  (SUF 43)  As Dr. Blumenkrantz opines, a diabetic on dialysis with end stage kidney failure who continues to smoke exponentially increases his own mortality.  (SUF 62)

In sum, wrongful death causation cannot be established in this case and is too remote and too attenuated.  GEO is entitled to summary judgment.

## C.   There Are Nineteen Months of Intervening Forces.

"Proximate cause analysis is also concerned with intervening forces operating independent of defendant's conduct."  *Novak*, 22 Cal.App.5th at 197.  The decedent was released from Adelanto on February 14, 2018 and died on September 19, 2019, 19 months later.  There are many "intervening forces" that led to decedent's death after his release from Adelanto.  (SUF 32-36, 48, 49, 54-62)

The medical records of the decedent showed multiple instances where he left a medical facility against medical advice, declined vaccinations, or failed to take the prescribed medications.  (SUF 34, 35, 44-61)  After being released from detainment, the decedent was undergoing dialysis and he missed some of those appointments.  (SUF 36)  After being released from detainment, the decedent saw a medical doctor less often than he did during detainment.  (SUF 48)  After being released from detainment, the decedent was treated at Whittier Hospital, Community Hospital, and Beverly Hospital (he died at Beverly Hospital).  (SUF

33)  Those facilities provided less quality care than the decedent had received while detained at Adelanto.  (SUF 61)

After his release from detainment (when the decedent was out of a controlled environment), the decedent's health worsened because of the lower quality of the medical care he had between March 2018 and September 2019. Also, the decedent continued to smoke cigarettes after his OREC release.  (SUF 42-43)  Thus, intervening forces between February 14, 2018 and September 19, 2019 negate any wrongful death causation.

### D.    Public Policy Considerations Weigh in Favor of GEO Regarding the Lack of Causation.

The public policy aspect of causation supports no liability on the part of GEO in this case.  Proximate cause entails "'various considerations of policy that limit an actor's responsibility for the consequences of his conduct.'"  *State Dept.*, 61 Cal.4th at 353 (citations omitted).  As further explained by the California Supreme Court in that case:

As Witkin puts it, "[t]he doctrine of proximate cause limits liability; i.e., in certain situations where the defendant's conduct is an actual cause of the harm, the defendant will nevertheless be absolved because of the manner in which the injury occurred.... Rules of legal cause ... operate to relieve the defendant whose conduct is a cause in

23

fact of the injury, where it would be considered unjust to hold him or

her legally responsible." (6 Witkin, Summary of Cal.

Law, *supra,* Torts, § 1186, p. 553.)  *Id.*

"As a matter of practical necessity, legal responsibility to pay must be

limited to those causes which are so close to the result, or of such significance as

causes, that the law is justified in making the defendant pay." *Kamaraperu v.*

*Feldsted*, 237 Cal.App.4th 60, 68 (2015).  The court's role is to decide whether "it

is just to hold a defendant liable for an injury in the first instance." *Modisette*, 30

Cal.App.5th at 155 (California Court of Appeal affirmed the trial court sustaining a

demurrer without leave to amend).

It is not "just" to allow the plaintiffs to continue with their lawsuit against

GEO given the absence of admissible evidence to meet their burden of proof on

wrongful death causation.  GEO has negated any "close causal connection"

between the medical care of decedent during detainment and his death 19 months

after release from detainment.  (SUF 1-69)  As a matter of public policy, GEO is

not liable for wrongful death given the lack of admissible evidence to prove the

requisite "close causal connection" under California law.

///

///

## IV.    WRONGFUL DEATH DAMAGES ARE NOT CLAIMED AND PLAINTIFFS LACK PROOF OF ECONOMIC LOSS

Damages are an element of a cause of action for wrongful death.  *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1263 (2006).  "A plaintiff in a wrongful death action is entitled to recover damages for his own pecuniary loss, which may include (1) the loss of the decedent's financial support, services, training and advice, and (2) the pecuniary value of the decedent's society and companionship—but he may not recover for such things as the grief or sorrow attendant upon the death of a loved one, or for his sad emotions, or for the sentimental value of the loss."  *Nelson v. County of Los Angeles*, 113 Cal.App.4th 783, 793 (2003).  Wrongful death damages "may not include damages recoverable under Section 377.34."  Cal. Code Civ. Pro. § 377.61, 377.34.  A wrongful death plaintiff "may not recover for the grief or sorrow attendant upon the death of a loved one, or for his or her sad emotions and for the sentimental value of the loss."  *Fernandez v. Jimenez*, 40 Cal.App.5th 482, 489 (2019).  See also, California Jury Instruction CACI 3921.

Plaintiffs have failed to meet their burden on the element of damages in order to sue for wrongful death.  In their Initial Disclosures, plaintiffs listed:

*///*

25

**Damages:**

Compensatory damages including but not limited to mental and emotional distress, medical expenses, and other special, general and compensatory damages in an amount according to proof; General damages; Special damages; Punitive and exemplary damages[1]; Statutory penalties; Attorney fees; Interest; Cost of suit; in an amount subject to proof at trial.  (SUF 71)

In interrogatory responses, plaintiffs listed as their claimed damages: "Plaintiff claims the full amount of general damages subject to proof, including, but not limited to pain, suffering, grief, anxiety, emotional distress, humiliation, and loss of support and companionship. As this propounding defendant is aware, no fixed standard exists for deciding the number of noneconomic damages and they are subject to determination by the trier of fact based on the evidence presented and the exercise of the trier's common sense."  (SUF 72)

Plaintiffs cannot recover "general damages" or their own emotional distress, grief or sorrow over the death of the decedent, as a matter of law. Plaintiffs now admit they cannot claim their own grief, sorrow, or mental anguish over the death of their husband and father.  (SUF 70-72, 77)  The loss of financial

---

[1] Punitive damages are "not available" in a statutory wrongful death action. *Boeken v. Philip Morris USA, Inc*., 48 Cal.4th 788, 796 (2010).

support of the decedent component of wrongful death damages has been

eliminated by requests for admissions.  (SUF 73)

In addition, plaintiffs have not produced any documents to support any

claim for loss of financial support by the decedent, including any earnings of the

decedent or any bills paid by the decedent.  (SUF 74-75)  In deposition, plaintiff

Karla Aranda could not provide any information on the decedent's financial

support only stating the decedent took care of their bills.  (SUF 76)  The

disclosure requirements are intended to "prevent unfair and prejudicial surprise."

*ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 551 (Fed. Cir. 1998).  Plaintiffs have

come forth with no admissible evidence of the decedent's financial support.

Indeed, plaintiffs have admitted their economic damages for wrongful death are

limited to the loss of gifts or benefits, funeral and burial expenses, and the

reasonable value of decedent's household services.  (SUF 73)

## V.  WELLPATH SHOULD BE JOINED OR THIS ACTION DISMISSED

A motion to compel joinder may be made "at any time."  Fed.R.Civ.P. 21.

"The issue is sufficiently important that it can be raised at any stage of the

proceedings—even *sua sponte*."  *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th

Cir. 1984), citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S.

102, 111 (1968).

"The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of . . . In circumstances where the litigation should not proceed without absent persons, the federal suit should be dismissed." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308-1309 (5th Cir. 1986). "Furthermore, when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id*. at 1309.

"Complete relief among existing parties" cannot be afforded without Wellpath being a party to this case. Rule 19(a). Wellpath is also an indispensable party under Rule 19(b). GEO contracted the medical care at Adelanto during the time period of the decedent's detainment to Wellpath. (SUF 7, 78-84) Plaintiffs have not sued Wellpath, despite GEO's discovery responses indicating the medical care of the decedent was handled by Wellpath. (SUF 86) GEO asserted the affirmative defense of failure to name necessary and indispensable parties in the Answer. (SUF 85) If plaintiffs overcome GEO's summary judgment motion, plaintiffs should be ordered to join Wellpath as a defendant or this action should be dismissed.

///

///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.    CONCLUSION

GEO is entitled to summary judgment on the sole cause of action for wrongful death.  There is a lack of causal connection between the decedent's medical care during detainment at Adelanto and his death 19 months after release from detainment.  Aranda's death was not "caused by" the medical care he received during detainment and plaintiffs cannot prove the required "close causal connection" to sue GEO for wrongful death.

Plaintiffs are not seeking statutory wrongful death damages and have not come forth with any proof of the decedent's financial support.

If necessary, Wellpath should be ordered to be joined as an indispensable party under Rule 19 as Wellpath was the entity responsible for the decedent's medical care during his detainment at Adelanto.


Dated:  March 22, 2024           **COCHRAN, DAVIS & ASSOCIATES, P.C.**

                                               *s/ Lisa Kralik Hansen*
                                 By: _____
                                        JOAN E. COCHRAN, ESQ.
                                        LISA KRALIK HANSEN, ESQ.
                                 **Attorneys for Defendant THE GEO GROUP, INC.**

## <u>CERTIFICATE OF SERVICE</u>

1

2        I hereby certify that on March 22, 2024, I electronically served **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;**

3   **MEMORANDUM OF POINTS AND AUTHORITIES** on the following party:

4   Gabriel Sepulveda-Sanchez, Esq.                    **Attorney for Plaintiffs,**
    SEPULVEDA SANCHEZ LAW, PC               **KARLA ARANDA and BRYAN**
5   811 Traction Avenue Suite 2A                                      **ARANDA**
    Los Angeles, CA 90013
6                                                                      Tel: (213) 426-1051
                                                                    Fax: :(213)426-1052
7                                                                                  Email:
                                                          Gabriel@sepulvedalawgroup.com
8
    John W. Stenson. Esq.                               **Attorney for Plaintiffs,**
9   LAW OFFICES OF JOHN W. STENSON        **KARLA ARANDA and BRYAN**
    5l5 S. Flower Street, 18th Floor                                  **ARANDA**
10  Los Angeles, CA 90071
                                                                     Tel: (310) 846-1709
11                                                                   Fax: (323) 313-0004
                                                             Email: jws@stensonlaw.com
12

13

14                              /s/ Lisa Kralik Hansen, Esq.
                                Lisa Kralik Hansen
15

16

17

18

19

20

21

22

23

24

25

26

27                                           30

28  _____